IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| | ) | |
| v. | ) | Criminal No. 13-173-02 |
| | ) | |
| PAUL DAVIS, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

CONTI, Chief District Judge

On August 21, 2013, defendant Paul Davis ("defendant") filed a motion to revoke the order of detention entered by the magistrate judge on June 25, 2013 (ECF No. 26), pursuant to 18 U.S.C. § 3145(b). (ECF No. 43.) The court scheduled a hearing on the motion for August 27, 2013, but continued that hearing at defendant's request pending the filing of the transcript from the June 25, 2013 detention hearing before the magistrate judge. (ECF No. 45.) The transcript was filed on October 23, 2013, and the instant motion was fully briefed by November 5, 2013. The parties thereafter appeared before the court on November 19, 2013. At that hearing, counsel agreed that an evidentiary hearing was not necessary, and presented oral argument on the motion. The court conducted a de novo review of the transcript of the proceedings before the magistrate judge, as well as the pleadings and briefing in this case and the pretrial services report prepared by the pretrial services officer and considered the arguments of counsel. Upon such review, the court found that there was clear and convincing evidence that defendant would be a danger to the community if released and ordered that defendant remain detained without bond pending trial.

This Memorandum Opinion sets forth the reasons for the court's decision, and is meant to supplement the reasons set forth on the record at the detention hearing on November 19, 2013.

I. **Background**

    A. **Procedural History**

On June 18, 2013, a grand jury returned a three-count indictment at criminal action number 13-173 charging defendant and Jaison Evans ("Evans") with various drug trafficking and firearm crimes. Specifically, defendant and Evans were charged in count one of the indictment with conspiracy to distribute and possess with intent to distribute five kilograms or more of cocaine in and around December 2012 and continuing thereafter to in and around January 2013 in violation of 21 U.S.C. § 846.[1] (ECF No. 1.) The offense at count one of the indictment carries a statutory minimum term of imprisonment of not less than ten years and a statutory maximum term of life imprisonment, with increased mandatory minimum sentences possible if a defendant has prior felony drug convictions. (ECF No. 2 at 6-7.)

A detention hearing was held on June 25, 2013. At the hearing, the magistrate judge determined that defendant failed to rebut the presumption that no condition or combination of conditions would reasonably assure the safety of the community if defendant were released and entered an order of detention for defendant pending trial. (ECF No. 26; H.T. 6/25/13 (ECF No. 46) at 21-24.) Defendant moved to revoke the order of detention. (ECF No. 43.) Oral argument was held on the motion on November 19, 2013. The court reviewed the transcript of the June 25, 2013 detention hearing, as well as the pleadings and briefing in this case, and the pretrial services report prepared by the pretrial services officer and considered the arguments of counsel, and determined that defendant's request for bond must be denied.

---

[1] This was the only count in which defendant was named in the indictment.

**B.     Offense History**

At the detention hearing before the magistrate judge on June 25, 2013, the government presented the testimony of Special Agent Jamie Bandzak ("Bandzak"), an Internal Revenue Agent detailed to the Drug Enforcement Agency (the "DEA"). (H.T. 6/25/13 (ECF No. 46) at 5, 8.) Defendant presented the testimony of Melissa O'Toole, defendant's girlfriend. (Id. at 11.) Based upon the testimony of these witnesses and the pretrial services report, the following factual background was developed.

Bandzak testified that from the summer of 2012 continuing into roughly February 2013 there was an ongoing investigation conducted by the DEA and other law enforcement agencies focused on traffickers of multi-pound amounts of marijuana and multi-kilogram amounts of cocaine. (Id. at 5.) One of the results of that investigation was the development and use of a confidential informant (the "CI"), an individual who previously sold personal-use quantities of marijuana and cocaine to defendant. (Id. at 5, 10.)

- The CI informed the DEA that he had sold defendant approximately half an ounce of cocaine in December 2012. (Id. at 5.)

- The CI further informed the DEA that during the course of his conversation with defendant in December 2012, the CI was told that defendant and his cousin, believed to be Jaison Evans, were prepared to purchase between 10 and 20 kilograms of cocaine and that they had approximately $500,000 in cash available to do so. (Id.)

- On January 9, 2013, the CI had a meeting with defendant that was supervised and recorded by the DEA during which defendant said to the CI such things as "Whatever I can get, I get what you got. If the bird and the money is right, I don't care how much you got, I'm serious, can you get 20?" In response, the CI and defendant negotiated various prices for the purchase of the cocaine, ultimately arriving at a purchase price of $33,000. Defendant further discussed how the kilograms of cocaine had to be packaged, prepared and presented to him and his cousin. (Id. at 6.)

- A second series of communications between the CI and defendant, which were also recorded, occurred a few days later during which defendant indicated "that he wants to buy between 10 and 20 kilograms of cocaine along with his cousin," followed by an attempt to negotiate the price, and that "he'll - believed to be referring to Mr. Evans -

3

he'll need to see the work, he'll cook some, like a gram, if it's good, then he will buy more," followed by further discussion about the transfer of money and presentation of actual kilograms of cocaine. (Id. at 6-7.)

- On January 18, 2013, another series of conversations between the CI and defendant were recorded during which defendant stated that "We'll test one before buying them all, but we'll whip up an ounce to see if it will do what it do. He'll give me the money, we'll do it at my house, it's safe, he's my family, bring one." (Id. at 7.)

As a result, search warrants were executed at defendant's house, located at 520 Long Road in Penn Hills, Pennsylvania, and Evan's house. (Id.) The search of Evan's house produced approximately $443,000, drug-related packaging and distribution paraphernalia, 500 grams of heroin and a firearm. (Id. at 7-8.) No drugs or money were found at the house defendant shared with Ms. O'Toole. (Id. at 9.) After the search warrants were executed, Evans admitted to being a heroin dealer and explained that he was at defendant's house to assist defendant with the purchase of kilograms of cocaine by identifying and working with the seller of the cocaine, who was the CI. (Id. at 8.)

### C. Defendant's Personal Background[2]

According to the pretrial services report prepared by the United States Probation and Pretrial Services Office, defendant has been a lifelong resident of the greater Pittsburgh, Pennsylvania area, with the exception of a six-year period between 2003 and 2009 when he lived mainly in Aberdeen, Maryland. (Pretrial Services Report at 1.) Defendant's mother and siblings reside in the Pittsburgh, Pennsylvania area, and defendant maintains contact with his family. (Id.) Prior to his arrest on the instant charges, defendant resided with his girlfriend, Melissa O'Toole, in Penn Hills, Pennsylvania and had custody of one of his six children. (Id.) Ms. O'Toole is

---

[2] Defendant's personal background information was obtained from the pretrial services report dated June 25, 2013, and the testimony of Ms. O'Toole at the June 25, 2013 detention hearing.

4

willing to serve as the third-party custodian for defendant and to notify the proper authorities if defendant violates any conditions of his bond. (H.T. 6/25/13 (ECF No. 46) at 14-15.)

The Pretrial Services Office reports that defendant has some employment history, including working at Applebee's Restaurant in May and June 2013. (Pretrial Services Report at 2.) According to the pretrial services report, defendant and Ms. O'Toole, defendant was enrolled at All State Career in West Mifflin, Pennsylvania, pursuing a course of study in Heating, Ventilation and Air Conditioning ("HVAC"), at the time of his arrest. (Pretrial Services Report at 2; H.T. 6/25/13 (ECF No. 46) at 13-14.) Defendant has no history of physical or mental health problems. (Pretrial Services Report at 2.) Defendant never received substance abuse treatment, but acknowledges occasional marijuana use since his late twenties. (Id. at 2-3.)

Defendant has been involved with the criminal justice system since the age of nineteen. (Pretrial Services Report at 3.) After several arrests in his early twenties for assault and disorderly conduct, defendant was first arrested for possession of a controlled substance at the age of twenty-two. (Id.) Defendant pled guilty and was placed on two years' probation in 1997 for a felony controlled substance offense. (Id.) In 2005, at the age of thirty-one, defendant pled guilty to misdemeanor possession of a controlled substance and was placed on six months' probation. (Id. at 4.) Defendant's record reflects that he has, multiple times, been arrested for assault and controlled substance offenses while on bond for other charges or while serving a period of probation. (Id.) Defendant's most recent arrest, prior to the instant offense, was in 2009. (Id. at 5.)

## II.     Standard of Review

The court's standard of review of a magistrate judge's denial of pretrial detention is de novo. United States v. Delker, 757 F.2d 1390, 1394 (3d Cir.1985).

## III.    Discussion

The structured system of the Bail Reform Act, 18 U.S.C. § 3141 et seq., regarding the release or detention of a defendant before trial seeks to ensure that the interests of the defendant and the public are carefully considered and contemplated before release or detention is ordered. The court is charged with holding a hearing to determine whether there exists "any condition or combination of conditions set forth in [18 U.S.C. § 3142(c)] that will reasonably assure the appearance of the [defendant] as required and the safety of any other person and the community." 18 U.S.C. § 3142(f). Section 3142(c)(1)(B) of the Bail Reform Act sets forth a nonexclusive list of conditions that a court may impose upon granting a defendant's motion for pretrial release. If the court determines no sufficient condition or combination of conditions exists, however, the court may order that a defendant be detained without bail pending trial.

In this case, the government argues that defendant is both a flight risk and a danger to the community. Safety of the community is implicated not only by violence, but also by narcotics trafficking. In cases involving drug offenses, the danger to the community is the likelihood that the defendant will, if released, traffic in illicit drugs. United States v. Perry, 788 F.2d 100, 111 (3d Cir. 1986); United States v. Strong, 775 F.2d 504, 506-07 (3d Cir. 1985).

### A. Rebuttable Presumption

In this case, a rebuttable presumption applies that no conditions or combination of conditions will reasonably assure defendant's appearance and the safety of the community. Section 3142(e)(3) provides:

> Subject to rebuttal by the person, it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community if the judicial officer finds that there is probable cause to believe that the person committed . . . (A) *an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act (21 U.S.C. 801 et seq.)*

18 U.S.C. § 3142(e)(3) (emphasis added).

There is probable cause to believe defendant committed the offense with which he is charged because a grand jury returned an indictment charging defendant with conspiracy to distribute and possess with intent to distribute five kilograms or more of cocaine, in violation of 21 U.S.C. § 846. (ECF No. 1.) The maximum statutory penalty for this controlled substance offense is life imprisonment. 21 U.S.C. § 846. Thus, subject to rebuttal by defendant, it is "presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community." 18 U.S.C. § 3142(e). Defendant does not contest that the rebuttable presumption applies in this case, but makes several policy-based arguments in his briefing attacking Congress' justification for the presumption itself. (ECF No. 48 at 6-7, 8-9). Those arguments were not presented at the November 19, 2013 hearing. The court nevertheless considered them and found them to be without merit.

A defendant may offer evidence to rebut the presumption that no condition or combination of conditions will reasonably assure the defendant's appearance and the safety of the community if defendant is released pending trial. A defendant must produce only "some evidence" to rebut the presumption set forth in § 3142(e). See United States v. Jessup, 757 F.2d

378, 384 (1st Cir. 1985). The quantum of evidence required to rebut the presumption is not high; rather, the defendant need only come forward with credible evidence conflicting with the presumption. Id. at 383. When a defendant produces conflicting evidence, the presumption does not disappear. The rebutted presumption retains evidentiary weight. See United States v. Carbone, 793 F.2d 559, 560-61 (3d Cir. 1986) (per curiam); United States v. Dillon, 938 F.2d 1412, 1416 (1st Cir. 1991); United States v. Palmer-Contreras, 835 F.2d 15, 18 (1st Cir. 1987) (per curiam).

### B. The § 3142(g) factors

In producing evidence to rebut the presumption, a defendant looks to the four factors set forth in § 3142(g) which the court must consider in determining whether pretrial detention is warranted. United States v. Mercedes, 254 F.3d 433, 436 (2d Cir. 2001) (to determine whether the presumption of dangerousness has been rebutted, the court should consider the factors set forth in § 3142(g)). The four factors are:

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
>
> (2) the weight of the evidence against the person;
>
> (3) the history and characteristics of the person, including--
>
>> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g).

### 1. Evidence Presented by Defendant to Rebut the Presumption

Defendant offers limited argument as to the first and second factors listed in § 3142. With respect to the first factor, defendant notes the absence of any allegation that he used violence or threats of violence during the offense charged in the indictment. (ECF No. 48 at 5.) With respect to the second factor, defendant indicates that no money or controlled substances were found at his house during execution of the search warrants. (Id.) Defendant does not address the fourth factor.

In attempting to rebut the presumption, defendant relies primarily upon factor three; i.e., his history and characteristics. Specifically, defendant offers the following evidence to rebut the presumption that no conditions or combination of conditions will reasonably assure his appearance and the safety of the community:

- The pretrial services report recommending that defendant be released on bond with certain conditions imposed (ECF Nos. 43 ¶ 4 and 48 at 5, ¶ 4);

- Ms. O'Toole's testimony that defendant has been in a long-term relationship with her, and lived with her for over a year prior to his arrest, and her willingness to serve as a third-party custodian for defendant (H.T. 6/25/13 (ECF No. 46) at 12-15; ECF No. 48 at 4-6);

- The pretrial services report, and testimony of Ms. O'Toole, that defendant was employed and attending school (Pretrial Services Report at 2; H.T. 6/25/13 (ECF No. 46) at 13-14; ECF No. 48 at 5-6, 8);

9

- The pretrial services report reflecting that defendant was not on probation or parole at the time of the offense charged in the indictment, had not been arrested for a crime resulting in a conviction since 2005 and had successfully completed past periods of probation (ECF No. 48 at 4-5, 8);

- The pretrial services report indicating that defendant does not have a passport and did not flee while released on bond by the state court after being charged with the conduct giving rise to the instant federal indictment (ECF No. 48 at 5, 8); and

- The testimony of Agent Bandzak establishing that defendant was subject to a reverse sting operation, whereby the government was attempting to sell drugs to defendant, making it unlikely that defendant will continue to commit additional crimes without the continued operations of the government (ECF No. 48 at 9.)

### 2. Clear and Convincing Evidence Presented by the Government and Balancing

Even assuming the foregoing evidence rebutted the presumption in this case, the government presented clear and convincing evidence regarding the nature of the offense charged, the weight of the evidence against defendant, defendant's personal characteristics, and the nature and seriousness of the danger to the community posed by defendant's release that, when weighed against defendant's evidence, established that no condition or combination of conditions would reasonably assure the safety of the community if defendant were to be released. 18 U.S.C. § 3142(f); Perry, 788 F.2d at 115 ("The clear and convincing standard does not even operate until the defendant has come forward with some evidence of lack of dangerousness."). The court concluded, however, that this same evidence failed to establish by a preponderance of the evidence that defendant posed a risk of flight. This conclusion is in accordance with the magistrate judge's finding. (ECF No. 26.)

With respect to the nature and circumstances of the offense charged, defendant was indicted for a very serious offense—conspiring to distribute and possess with the intent to distribute five kilograms or more of cocaine. This violation of 21 U.S.C. § 846 carries a mandatory minimum term of imprisonment of ten years and a maximum term of life

imprisonment. The mandatory minimum could be increased to twenty years or life imprisonment if defendant's prior drug convictions qualify for the statutory enhancements. The indictment in this case supports the finding of probable cause with respect to this offense and is evidence of the serious nature of the offense, which weighs against a finding that defendant should be released pending trial. Defendant contends that this factor weighs in his favor because he is not accused of using violence or threats of violence during the commission of the alleged crime. Although § 3142(g)(1) instructs a court to consider whether an offense is a crime of violence or involves a weapon, it also instructs a court to consider whether an offense involves a controlled substance. 18 U.S.C. § 3142(g). That defendant's offense does not fall into the former category is inconsequential given that it does fall into the latter. Defendant was unable to present any evidence weighing against the government's evidence on this factor and it, thus, weighs in favor of detaining defendant pending trial.

Second, in considering the weight of the evidence against defendant, the court examined all the evidence presented at the hearing, including the evidence outlined above in the background section. Based upon that review, the court concludes that the weight of the evidence against defendant as presented by the government is strong. Several of defendant's conversations with the CI were recorded and monitored by the DEA. Evidence obtained from these recordings indicates that defendant was involved, on more than one occasion, in arranging details with respect to the purchase of a substantial quantity of cocaine during this time period. Money, heroin, and firearms were found at the home of Evans, with or for whom defendant was purchasing the cocaine from the CI. Defendant's sole argument on this factor is that no money or drugs were found at the home defendant shared with Ms. O'Toole and that only heroin was found at his co-conspirator's house, while the conduct charged in the indictment involved

cocaine. These facts do not negate the other substantial evidence against defendant, the nature of which weighs in favor of detaining defendant pending trial.

The court next considers the history and characteristics of the defendant, which presents a closer question. The government notes that defendant has been involved in the criminal justice system since the age of nineteen and served past periods of probation for controlled substances offenses. (Pretrial Services Report at 3-4.) Although defendant contends that he served these periods of probation without incident, the pretrial services report indicates that he was arrested for simple assault while serving the first such period. (Id. at 4.) The pretrial services report also reflects that defendant was twice arrested while released on bond for pending charges and, since the age of nineteen, has never gone five years without being arrested. (Id. at 4.) This pattern minimizes the significance of the fact that defendant's last criminal conviction occurred in 2005. (ECF No. 48 at 4, 6.)

The government attacks Ms. O'Toole's ability to act as a suitable third-party custodian given her lack of knowledge of defendant's prior involvement with the criminal justice system. (ECF No. 47 at 7.) Even if the court credits Ms. O'Toole's testimony that she did not know of defendant's prior drug convictions, of the extent of his relationship with Evans, his co-conspirator, or of his involvement in the conduct which forms the basis of the instant indictment, it is undisputed that such conduct occurred while defendant was involved in a relationship with and living with Ms. O'Toole, which indicates that defendant successfully hid such criminal activity from her. These factors draw into question Ms. O'Toole's ability to act as a third-party custodian.

Lastly, the government indicates that the pretrial services officer recognized that defendant has a history of flight resulting in bench warrants. (Id.) This contention is directly contradicted by the pretrial services report which states that "defendant has no known history of warrants or failure to appear." (Pretrial Services Report at 5.) The court assigned no weight to the government's proffer on this issue. On this subject, defendant relies heavily on the fact that he did not flee after the state court released him on bond for the charges that form the basis of the instant indictment. This fact weighs in favor of a finding that defendant is unlikely to flee the jurisdiction and supports the court's conclusion that the government has failed to prove by a preponderance of the evidence that defendant will be a flight risk, but does nothing to establish that defendant will not be a danger to the community if released.

Defendant also offers evidence that that he is a long-term resident of this area, who has ties to family and friends here and attends school and has maintained employment. These facts do weigh against a finding that defendant is a flight risk, but again, cannot negate the strong evidence that defendant will pose a danger to the community if released. Also, as an initial matter, because defendant relies so heavily on his enrollment in school, the court is compelled to note that defendant's interactions with the CI which form the basis of the federal indictment occurred while he was a student at All State Career, and, as noted above, while defendant was in a serious relationship with Ms. O'Toole, the proposed third-party custodian. (Pretrial Services Report at 2 (October 2012 enrollment date).) With respect to defendant's employment, the pretrial services report indicates that defendant only began working at Applebee's Restaurant approximately a month before his arrest on the instant charge. (Id.) Defendant's employment history is otherwise scattered and not particularly remunerative. These observations demonstrate that defendant's evidence regarding his schooling, employment and relationship with Ms.

13

O'Toole, on balance, does not support a finding that defendant will not pose a danger to the community if released. The evidence regarding defendant's history and characteristics supports a conclusion that the government failed to establish by a preponderance of the evidence that defendant would be a flight risk, but weighs in favor of a finding, by clear and convincing evidence, that defendant would be a risk to the community if released pending trial.

The court recognizes that, at the time of the current offense or arrest, defendant was not on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law. The court, however, also recognizes that, in the past, defendant did violate the conditions of bond and probation by committing criminal acts while released. Therefore, this factor is neutral, on balance.

Finally, the court must consider the nature and seriousness of the danger to any person or the community that would be posed by defendant's release. In other words, the court must *predict* whether defendant will engage in criminal activity if released pending trial. Perry, 788 F.2d at 114 ("[T]he dangerousness determination involves a prediction of the detainee's likely future behavior[,]" i.e., a prediction about "the likelihood that the defendant will, if released, commit one of the proscribed federal offenses."). "Such a prediction explores not the external world of past events but the inner territory of the detainee's intentions." Id. at 114. The court, however, can only look to the record before it, which reflects that in the past when defendant was released on bond or serving a period of probation he committed further crimes. Thus, even if defendant had rebutted the § 3142(e) presumption, this court finds after considering the record as a whole, there is no condition or combination of conditions which would reasonably assure that defendant would not engage in criminal activity, to include drug trafficking, on release. The court is not persuaded by defendant's argument that he will not engage in drug trafficking if

released because the CI will no longer be inducing him to buy large quantities of cocaine as part of a "reverse sting operation." In light of the evidence, considered as a whole, the court is compelled to predict that defendant is likely to engage in criminal drug trafficking activity if he is released pending trial, which poses a very serious danger to the community.

After considering the record as a whole, including consideration of the nature and circumstances of the serious drug offense charged, the strong weight of the evidence against defendant, the history and characteristics of defendant, the nature and seriousness of danger to the community posed by defendant's release, and the rebuttable presumption, which retains evidentiary weight even if rebutted, there is no condition or combination of conditions which would reasonably assure that defendant would not engage in drug trafficking while on release pending trial. The government met its burden to show by clear and convincing evidence that defendant poses a danger to the community if released.

The court, therefore, will enter an order of detention for defendant pending trial. An appropriate order will be entered.

Dated: November 20, 2013 /S/ JOY FLOWERS CONTI
Joy Flowers Conti
Chief United States District Judge